# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 2, 2004            Decided January 11, 2005

No. 03-5120

LAWRENCE BATTLE,
APPELLANT

v.

FEDERAL AVIATION ADMINISTRATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 01cv01350)

*Thomas J. Gagliardo* argued the cause and filed the briefs for appellant.

*Oliver W. McDaniel*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  Lawrence Battle appeals the grant of summary judgment to the Federal Aviation Administration ("FAA") in his lawsuit seeking to enforce an arbitration award that arose from internal FAA personnel procedures of which Battle availed himself upon being dismissed from employment. Despite the FAA's termination of the neutral arbitrator's services, the neutral arbitrator, with the employee member, issued an opinion and award in Battle's favor, which the FAA refused to recognize.  The district court concluded that it had jurisdiction and granted summary judgment to the FAA.  Battle appeals, contending that the arbitration panel acted within its authority and the FAA had no discretion under its internal rules to abandon the arbitration process midstream.  The FAA responds that the district court lacked jurisdiction, that the case is not ripe, and that, in any event, it did not violate its internal rules.  Upon *de novo* review, we hold that the district court had subject matter jurisdiction over Battle's complaint because the termination of the neutral arbitrator's services was not a final order of the FAA Administrator concerning "aviation duties and powers."  49 U.S.C.A. § 46110(a) (West Supp. 2004).  We further hold that, in light of Battle's pursuit of disability discrimination claims and the neutral arbitrator's stated intent to consider such claims in the internal appeals proceeding, the FAA's actions are properly understood as enforcing its rules, which preclude consideration of discrimination claims, and therefore Battle's claim under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), is without merit. Accordingly, we affirm the grant of summary judgment.

## I.

In 1995, Congress divested the Merit Systems Protection Board ("MSPB") of jurisdiction over certain types of FAA adverse personnel actions and authorized the FAA to establish an internal process to be known as "Guaranteed Fair Treatment" ("GFT").  *See* Department of Transportation and Related

Agencies Appropriations Act for Fiscal Year 1996, Pub. L. No. 104-50, § 347, 109 Stat. 436, 460 (1995). Congress retroactively restored the MSPB's jurisdiction in May 2000, but the GFT appeals process remains. *See* Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, tit. III, § 307(a), 114 Stat. 61, 124 (2000) (codified at 49 U.S.C. § 40122(g)-(i) (2000)). Under the GFT rules promulgated by the FAA, an employee has the right to appeal a removal decision to a three-person arbitration panel composed of a representative of the employee, a representative of the FAA, and a neutral arbitrator. FAA Personnel Management System ch. III, § 5(e) (Mar. 28, 1996) ("FAAPMS"). However, the rules provide exceptions and restrictions. Thus, "[c]laims of statutorily prohibited discrimination may not be raised in the FAA Appeals Procedure," but shall be pursued under an alternative procedure for such claims that begins with a consultation with an Equal Employment Opportunity ("EEO") counselor in the Transportation Department's Office of Civil Rights. *Id*. ch. III, § 5(n). Under the May 2000 amendment, the MSPB also has jurisdiction over so-called "mixed claims," i.e., cases partially involving claims of statutory discrimination. *See* 49 U.S.C. § 40122(g)(2)(H), (g)(3); 5 U.S.C. § 7702 (2000); *Miller v. Dep't of Transp*., 86 M.S.P.R. 293 (2000). The GFT rules also do not permit an award of attorney or representation fees. FAAPMS ch. III, § 5(*l*). Finally, the rules provide that "[d]ecisions of the [arbitration] panel shall be issued as final orders of the [FAA] Administrator under 49 U.S.C. [§] 46110." *Id.* ch. III, § 5(m).

The FAA notified Battle on January 7, 2000, following his absence from work for nearly seventeen months, of its proposal to terminate his employment for "non-disciplinary reasons," namely because of his "unavailability to perform the duties of [his] current position" and his "inability to perform the essential functions of [his] position." The termination became effective

February 20, 2000, based on the FAA's conclusion that although Battle claimed he was unable to work a class of jobs or perform a class of functions because of a "generalized anxiety disorder," he was not "disabled" under the Rehabilitation Act, 29 U.S.C. § 791(g) (2000); *see also* 42 U.S.C. § 12111 (2000), because he only was unable to work for a particular supervisor. The letter of termination also advised that Battle could appeal the decision through the GFT process, or, if he believed the decision was based on discrimination due to race, color, religion, sex, national origin, disability, age, or sexual orientation, or retaliation for participation in the EEO process, he could file a discrimination claim with the Transportation Department's Office of Civil Rights.

Battle appealed his termination on two fronts. A letter from his counsel advised the FAA that Battle claimed that he was "disabled," that he was discriminated against on the basis of race or participation in the EEO process, and that he was denied procedural due process. First, Battle invoked the GFT appeals process rather than the more formal processes before the MSPB that became available in May 2000. *See* 49 U.S.C. § 40122(g)(2)(H), (g)(3); 5 U.S.C. § 7702 . Second, he invoked the EEO process, and he ultimately sued the FAA in federal court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2000), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (2000), and the Rehabilitation Act, *id.* § 701 *et seq*.

Pursuant to Battle's request to proceed with the GFT appeal, the FAA appointed Dr. Andrée McKissick as the neutral member of the three-person arbitration panel to hear his appeal. However, the FAA advised Battle that it would file a motion to dismiss for lack of jurisdiction if he presented his discrimination claims to the panel and requested relief – such as money damages for emotional distress, attorneys' fees and costs – that

was unavailable under the GFT appeals process. At the time, the neutral arbitrator stated that the arbitration would proceed because Battle's attorney advised that there were issues unrelated to the discrimination claims that could be presented to the panel. When Battle persisted in raising allegations that the FAA viewed to be claims of discrimination, the FAA moved to dismiss. The neutral arbitrator held the motion in abeyance while conducting three days of hearings in which the panel heard evidence of discrimination. At this point the FAA wrote to the neutral arbitrator seeking assurance that the discrimination claims would not be considered during the GFT appeals process. The FAA explained that it was not seeking to prevent Battle from making his claims; rather, it was seeking to ensure that he brought them in the appropriate forum. The neutral arbitrator responded by letter of July 14, 2000, that her inquiry into whether the FAA had "just cause" to fire Battle necessitated consideration of general notions of discrimination by looking to the treatment of similarly situated persons. Three days later the FAA – by letter signed by the Assistant Administrator for Human Resource Management, the Deputy Chief Counsel, and the Director of Air Traffic System Requirements – informed the neutral arbitrator that her services were terminated. The FAA also informed Battle's counsel of its action and advised, by letters of July 18 and 19, 2000, that, in light of the MSPB's jurisdiction over "mixed cases," it had forwarded Battle's case file to the MSPB.

On September 18, 2000, the ex-neutral arbitrator issued an "Opinion and Award" for herself and the employee member of the arbitration panel, finding discrimination in the removal process, ordering that Battle be reinstated with back pay, and awarding attorneys' fees. The FAA refused to recognize the award and so informed Battle on November 28, 2000. Battle filed suit in the district court seeking to enforce the Opinion and Award, alleging that the FAA's refusal violated "[FAA] policy

and federal law," as well as the Due Process Clause of the Fifth Amendment. On cross motions for summary judgment, the district court ruled it had jurisdiction because an "adverse employment action . . . is not the kind of action" that falls within the courts of appeals' exclusive jurisdiction under 49 U.S.C.A. § 46110(a), and it granted the FAA's motion for summary judgment. Construing Battle's complaint to raise an *Accardi* claim based on the allegation that the FAA had violated its rules, the district court assumed a violation but found no prejudice because Battle's EEO lawsuit against the FAA was still pending. The district court rejected Battle's due process claim on the ground that he did not have a protected interest in pursuing a discrimination claim before the GFT panel. Battle appeals only the denial of his *Accardi* claim.

## II.

As a threshold matter, we must determine whether the district court had jurisdiction over Battle's lawsuit to enforce the arbitration award. The FAA argues that the district court was statutorily barred from addressing the merits of Battle's claims because 49 U.S.C.A. § 46110(a) vests exclusive jurisdiction in the courts of appeals. Although neither party addresses the current version of § 46110(a), as amended in 2003, that version is controlling. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994); *Bruner v. United States*, 343 U.S. 112, 116-17 (1952). As relevant, the 2003 amendment to § 46110(a) deleted the word "safety" (as shown below in brackets). *See* Century of Aviation Reauthorization Act, Pub. L. No. 108-176, tit. II, § 228, 117 Stat. 2490, 2532 (2003). Section 46110(a) now provides, in relevant part:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers

designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to *aviation [safety] duties and powers* designated to be carried out by the Administrator) in whole or in part under this part, part B, or subsection (*l*) or (*s*) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C.A. § 46110(a) (West Supp. 2004) (emphasis added).

We begin with the statutory text, *see e.g.*, *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 124 S. Ct. 1756, 1761 (2004), viewed in the context of the GFT appeals process, while recognizing the obligation to give effect to each word in a statute, *see Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 489 n.13 (2004); *Asiana Airlines v. FAA*, 134 F.3d 393, 398 (D.C. Cir. 1998). The plain language of § 46110(a) limits the courts of appeals' exclusive jurisdiction to the Administrator's orders relating to her "aviation duties and powers." The FAA maintains that its decision to terminate Battle's GFT appeal was a final decision under FAAMS, which falls within Part A of Subtitle VII of Title 49, and that Battle's attempt to enforce the arbitration award is a collateral attack on that final FAA decision. While there may be personnel actions that would relate to the Administrator's "aviation duties and powers," *see, e.g., Lopez v. FAA*, 318 F.3d 242 (D.C. Cir. 2003), this is not such a case. The decision to terminate the GFT appeals process was made in the context of an intra-agency appeal involving a personnel claim by an employee who was a

Management and Program Analyst and whose responsibilities, so far as the record reveals, were administrative in nature. Battle's attempt, through enforcement of the arbitration award, to be reinstated with back pay, as well as the FAA's termination of the neutral arbitrator, were unrelated to the Administrator's "aviation duties and powers" except to the extent that anything involving the FAA relates to aviation duties and powers. Were the court to hold that any intra-agency appeal challenging dismissal from employment falls within § 46110(a), there would be no meaning left to the limiting clause.

The court owes no deference to the FAA's interpretation of our jurisdiction. *See Murphy Exploration & Prod. Co. v. U.S. Dep't of Interior*, 252 F.3d 473, 478-80 (D.C. Cir.), *modified on denial of reh'g*, 270 F.3d 957 (D.C. Cir. 2001). Consequently, the FAA's reliance on the FAAPMS's provision that "[d]ecisions of the [arbitration] panel," FAAMPS ch. III, § 5(m), are treated as the Administrator's final orders under § 46110(a), is of no moment. While the court has previously considered a petition for review from an opinion and award of the GFT arbitration panel under the pre-2003 version of § 46110(a), *see Kropat v. FAA*, 162 F.3d 129 (D.C. Cir. 1998), the court did not confront the jurisdictional issue now raised by the FAA. Moreover, the FAA's decision to terminate the neutral arbitrator's services and to end the GFT appeals process were not "[d]ecisions of the [arbitration] panel" to which FAAMPS ch. III, § 5(m) applies.

Accordingly, we hold that the district court had jurisdiction over Battle's complaint challenging the FAA's termination of the neutral arbitrator and seeking enforcement of her Opinion and Award.

### III.

Our review of the grant of summary judgment is *de novo*.

*See Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Battle's appeal is limited to his *Accardi* claim that the FAA violated its GFT rules through termination of the neutral arbitrator's services and cancellation of the appeals proceeding in the absence of an internal rule permitting it to do so. Hence, his due process claim is waived.

In *Accardi*, 347 U.S. 260, the Supreme Court held that the Attorney General acted improperly in attempting to influence deportation proceedings before the Board of Immigration Appeals ("BIA") despite his prior delegation, by regulation, to the BIA of his discretionary authority under the immigration laws. The Court stated that "as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the [BIA] or dictate its decision in any manner." *Id.* at 267. *Accardi* has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others. *See, e.g.*, *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003). The Supreme Court has explained that the application of this principle is not limited to instances like *Accardi* where an agency "fail[s] to exercise it own discretion, contrary to existing valid regulations," 347 U.S. at 268, but it also applies where dismissal from federal employment falls "substantially short of the requirements of the applicable departmental regulations," *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959)*; see also Service v. Dulles*, 354 U.S. 363, 373-76 (1957). As this court has recognized, "'[a] court's duty to enforce an agency regulation[, while] most evident when compliance with the regulation is mandated by the Constitution or federal law,' embraces as well agency regulations that are not so required." *Lopez*, 318 F.3d at 247 (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)). "[A]gencies cannot 'relax or modify' regulations that provide the only safeguard individuals have against unlimited agency discretion in hiring and termination." *Id.* (citing *Mazaleski v. Treusdell*, 562 F.2d

701, 719 (D.C. Cir. 1977)).

Count One of Battle's complaint alleges that the FAA's "refusal to abide by the decision of the arbitration panel violates [FAA] policy." As the essence of an *Accardi* claim is that an agency did not follow its rules, and Battle argued his claim in the district court as if it was based on *Accardi*, the FAA's suggestion that it lacked sufficient notice to mount an adequate defense is unpersuasive. *Cf. Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114-15 (D.C. Cir. 2000). Its ripeness claim fares no better. Maintaining that the *Accardi* claim is not ripe because Battle could prevail and obtain all the relief he seeks in his EEO lawsuit, the FAA overlooks that Battle's EEO suit is the result of a proceeding unrelated to the FAA's internal GFT appeals process and has no bearing on whether the FAA had authority to terminate the neutral arbitrator's services and to end the appeals proceeding. Moreover, the harm resulting from the delay in enforcement of the arbitration award, if valid, is obvious, and Battle's contention is hardly an abstract controversy that will reach a more definite form by postponing review. *Cf. Nat'l Res. Def. Council, Inc. v. FAA*, 292 F.3d 875, 881 (D.C. Cir. 2002).

Turning to the merits of his *Accardi* claim, Battle contends that once the arbitration panel was convened, the FAA, as required by the GFT rules, ceded authority over Battle's personnel status to the arbitration panel, and the FAA's decision to abandon the arbitration process midstream was not authorized by any provision of the GFT rules. Battle, however, does not dispute that the GFT proceedings are not to encompass statutory discrimination claims. Yet the record shows that Battle pursued two parallel proceedings in which he raised the same discrimination claims. His pleadings in his GFT appeal contained references to the same statutorily prohibited discrimination that he also pursued in his EEO complaint to the

Transportation Department's Office of Civil Rights. Specifically, Battle's written statement of appeal to the GFT panel raised claims of disability discrimination and alleged that the FAA had failed to provide an appropriate accommodation for his "generalized anxiety disorder." While his then-counsel assured FAA officials that he was raising issues unrelated to statutory discrimination claims, his GFT appeal did not proceed in that manner. Instead, Battle sought to use discovery, which is not permitted in GTF proceedings, *see* FAAPMS ch. III, § 5(g), to press his claims of discriminatory and retaliatory removal. Furthermore, he presented evidence of statutorily prohibited discrimination in addressing the "fairness" of his termination.

Faced with an employee who, although forewarned, was not following the GFT rules in appealing the termination of his employment, the FAA first moved to dismiss the GFT appeals proceeding. When the neutral arbitrator deferred ruling on the motion, the FAA sought assurance from the neutral arbitrator that she was not going "to allow testimonial and/or documentary evidence, and/or issue rulings/decisions involving allegations of prohibited discrimination under Title VII of the 1964 Civil Rights Act, the Rehabilitation Act, the Age Discrimination in Employment Act, or any other anti-discrimination law." The FAA explained in its letter to the neutral arbitrator that it took its "stewardship of [the GFT] process seriously" and that the neutral arbitrator's failure to assure the FAA that she would comply with the GFT rules or to act consistently with her assurance would result in the termination of her services. The neutral arbitrator's response failed to provide assurance. Asserting that she had "fully complied with the FAA's [GFT] Appeals Procedure," the neutral arbitrator took the position, however, that "to analyze whether or not the process of [Battle's] removal was fair[,] it is crucial to discern how other similarly situated employees were treated under the same or

similar circumstances." The neutral arbitrator continued:

> Since the circumstances of this grievance involves [sic] the request for reasonable accommodations and the concurrent request for [Battle] to be categorized as a disabled person, it is essential to weigh the testimonies of the [FAA] officials who dealt with this request and their rationale for not characterizing [Battle] as being handicapped. It is impossible to judge the merits of this case and exercise due process without this analysis.
>
> Fairness is implicit to [sic] the concept of just cause; . . . Clearly, the [FAA] is required to demonstrate that its action to remove [Battle] was reasonable and thus implemented in a non-discriminatory manner. In sum, I have requested that the [FAA] show, through testimony of [its] officials, the absence of discrimination in this regard.

In other words, the neutral arbitrator informed the FAA that she was addressing disability discrimination, under the guise of a "just cause" determination, in terms virtually indistinguishable from a statutory claim under the Rehabilitation Act. *See* 29 U.S.C. § 791(g); *see also* 42 U.S.C. § 12111.

Now faced not only with an employee who was attempting to use the GFT appeals process to pursue claims that the GFT rules barred, but also with a neutral arbitrator whom the FAA reasonably could conclude was allowing the employee's claims to be considered contrary to the GFT rules, the FAA, having previously alerted both individuals to the limited nature of GFT appeals process and having been rebuffed, terminated the neutral arbitrator's services. While the FAA could not have known the content of the neutral's purported "Opinion and Award" at the

time that it terminated her services (or that she would even issue a decision), the Opinion and Award was consistent with the position taken by the neutral arbitrator, namely, that discrimination would be addressed. The Opinion proved the FAA's concerns to be legitimate by repeatedly using terminology found in Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117, as incorporated into the Rehabilitation Act, *see* 29 U.S.C. § 791(g), determining that Battle's inability to perform essential duties was caused by a "legitimate mental impairment," and ruling that a FAA employee proficient in reasonable accommodations under the ADA should consider Battle's request for a transfer.

Under the circumstances, Battle mischaracterizes the nature of the FAA's termination of the neutral arbitrator's services. Rather than seeking to exert improper influence on the substantive outcome of the proceeding, as the Attorney General sought to do in *Accardi*, or otherwise failing to provide Battle with a process to which he is entitled, the FAA's action is properly understood as enforcing the GFT rules, which provide that discrimination claims are beyond the purview of the GFT appeals process and are to be addressed by the Transportation Department's Office of Civil Rights, *see* FAAMPS ch. III, § 5(n), or by the MSPB, *see* 49 U.S.C. § 40122(g)(2)(H), (g)(3)*;* 5 U.S.C. § 7702. Absent such action by the FAA in the face of the neutral arbitrator's stated intent and failure in fact to abide by the limitations of the GFT appeals process, the integrity of the GFT appeals process would have been compromised. Further, the FAA would have abdicated its responsibility to facilitate the prompt, fair, and consistent resolution of claims properly within the GFT appeals process while ensuring that discrimination claims are resolved in the proper forum. Contrary to Battle's suggestion on appeal, nothing in the record suggests that the FAA sought to interfere with the substantive relief to which Battle may be entitled; rather, the FAA sought to

channel his claims to the authorized forum and did so. While Battle maintains that the FAA could have waited for an award to be issued by the panel and then raised the *ultra vires* issue in a timely action seeking direct review, or, alternatively, waited until Battle attempted to enforce the award, Battle cites only § 46110(a), which provides no statutory authority for the former, and *Accardi* does not require the latter. It was Battle and the neutral arbitrator, not the FAA, who ignored the FAA's GFT rules. Under these extraordinary circumstances, the FAA's action in bringing the *ultra vires* GFT appeals proceeding to a halt by terminating the neutral arbitrator's services was not precluded by *Accardi.*

Morever, the FAA's decision to terminate the GFT appeals process and transfer Battle's case file to the MSPB, which has jurisdiction over "mixed cases," instead of appointing another neutral arbitrator to hear Battle's claims presents no *Accardi* violation. Despite Battle's discrimination claims, the FAA did not attempt unilaterally to terminate the GFT appeals process at the outset. Instead, the FAA advised Battle of the proper forum for such claims, and when he persisted in presenting discrimination claims in his GFT appeal, the FAA filed a motion with the arbitration panel to dismiss the appeal for lack of jurisdiction. While Battle had the option to elect among the available fora for review of "a major adverse personnel action," 49 U.S.C. § 40122(i), he had no right to select an inappropriate forum, here contesting statutorily prohibited discrimination through the GFT appeals process, *see* FAAPMS ch. III, § 5(n), when such claims were within the purview of the Transportation Department's EEO process, *see id.*, or the MSPB, *see* 49 U.S.C. § 40122(g)(2)(H), (g)(3); 5 U.S.C. § 7702. Because Battle was not entitled to pursue discrimination claims in the GFT appeals process, yet persisted in attempting to do so, the FAA did not violate *Accardi* when it terminated the proceeding and transferred his appeal to the MSPB after the neutral arbitrator

allowed him to proceed.

Accordingly, we affirm the grant of summary judgment.

*So ordered.*