Opinion for the Court filed PER CURIAM.
Concurring opinion filed by Senior Circuit Judge WILLIAMS.
PER CURIAM:
Appellants, California almond producers, claim that the Secretary of Agriculture, seeking to prevent the spread of salmonella, exceeded his authority in requiring California almonds sold domestically to be treated with heat or chemicals. The district court granted summary judgment for the Secretary. Finding that appellants have waived their claims by failing to raise them during the rulemaking process, we affirm.
I.
Under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §§ 601-74 (“AMAA”), the Secretary of Agriculture may issue marketing orders binding “handlers” of commodities such as almonds. 7 U.S.C. § 608c(l)-(2). While “producers” grow commodities, commodity handlers are “processors, associations of producers, and others engaged in the handling” of commodities. Id. § 608c(l). As relevant here, marketing orders may provide “terms and conditions ... [Ijimiting, or providing methods for the limitation of, the total quantity of any such commodity or product, or of any grade, size, or quality thereof.” Id. § 608c(6)(A). For a marketing order to become effective, the handlers responsible for at least half the volume of the commodity in the covered area must approve it. Id. § 608c(8). The Secretary, *397 however, may impose a marketing order without handler consent if, among other things, he finds that the order is “the only practical means of advancing the interests of the producers.” Id. § 608c(9).
California almond handlers are subject to the California Almond Marketing Order, 7 C.F.R. pt. 981. The Almond Order provides for “quality control” of almonds, allowing the Secretary to approve “such minimum quality and inspection requirements applicable to almonds to be handled ... as will contribute to orderly marketing or be in the public interest.” 7 C.F.R. § 981.42(b).
After two salmonella outbreaks were linked to almonds grown in California, the Secretary published in the Federal Register a proposed rule requiring handlers to treat almonds sold domestically with heat or chemicals. Almonds Grown in California; Outgoing Quality Control Requirements and Request for Approval of New Information Collection, 71 Fed.Reg. 70,683 (Dec. 6, 2006). Every California almond producer was mailed a brochure that explained the proposed rule and encouraged producers to “take part in the public process.” After receiving comments and modifying the proposal somewhat to address issues raised, the Secretary adopted the treatment rule as a “quality control” requirement under the Almond Order. Almonds Grown in California; Outgoing Quality Control Requirements, 72 Fed. Reg. 15,021, 15,021-22, 15,029-33 (Mar. 30, 2007) (“Treatment Rule”).
Several almond producers challenged the treatment rule under the Administrative Procedure Act. The producers claimed that the treatment rule exceeded the Secretary’s authority under both the AMAA and the Almond Order. Although conceding that the Secretary may prohibit the sale of contaminated almonds under his authority to limit almond quality, the producers contended that the Secretary lacks authority to require the treatment of all almonds irrespective of whether they are contaminated. The producers also claimed that almond handlers withdrew their support for the Almond Order in 1996 and that the Secretary never determined that the treatment rule is “the only practical means of advancing the interests of the producers,” as the AMAA requires for orders lacking handler support. 7 U.S.C. § 608c(9)(B). The district court, finding that the Secretary had authority to issue the rule and that the producers had waived their claim about the “only practical means” determination, granted summary judgment for the Secretary. Koretoff v. Vilsack, 841 F.Supp.2d 1. (D.D.C.2012). The producers now appeal, reiterating the arguments they made in the district court.
II.
The Secretary argues that the producers have waived all their claims by failing to raise them during notice and comment. See Advocates for Highway & Auto Safety v. FMCSA, 429 F.3d 1136, 1150 (D.C.Cir.2005) (“[A] party will normally forfeit an opportunity to challenge an agency rulemaking on a ground that was not first presented to the agency for its initial consideration.”). Although these particular producers did not participate in the rulemaking process, they nonetheless insist that their arguments about the Secretary’s authority to issue the rule are preserved for two reasons.
First, the producers argue that an exception to the waiver doctrine applies because “[t]he issues were presented to (and resolved by) the agency.” Appellants’ Reply Br. 7. Although conceding that none of the producers who did comment made this argument during the rulemaking, the producers maintain that “the question of *398 agency authority to issue a mandatory processing rule was expressly raised early in the rule development process,” pointing to a meeting attended by a Department of Agriculture representative in which “it was asked if [the Secretary] has authority to mandate a kill step process.” Appellants’ Reply Br. 7-8, 8 n.4 (emphasis added). The representative replied that the Department was “investigating the issue” and reported back a week later that “there is legal authority under the Marketing Order” to “implement a mandatory treatment or ‘pasteurization’ program.” Appellants’ Reply Br. 8 n.4.
Under our case law, this was insufficient to preserve the issue. Nothing in the record suggests that the Secretary considered the producers’ specific argument, i.e., that although the Secretary may prohibit the sale of contaminated almonds, he lacks authority to require the treatment of all almonds irrespective of whether they are contaminated. We require “the argument [petitioner] advances here” to be raised before the agency, not merely the same general legal issue. Nuclear Energy Institute, Inc. v. EPA, 373 F.3d 1251, 1291 (D.C.Cir.2004) (per curiam). “While there are surely limits on the level of congruity required between a party’s arguments before an administrative agency and the court, respect for agencies’ proper role in the Chevron framework requires that the court be particularly careful to ensure that challenges to an agency’s interpretation of its governing statute are first raised in the administrative forum.” NRDC v. EPA, 25 F.3d 1063, 1074 (D.C.Cir.1994). Furthermore, as the producers themselves make clear in their brief, the issue considered at the meeting related only to the Secretary’s authority under the Almond Order, not the statute.
Second, the producers argue that the Secretary was “obligated under the APA to address [his] statutory authority sua sponte,” whether ‘Taised by a commenter or not.” Appellants’ Reply Br. 7-9. It is certainly true that agencies are required to ensure that they have authority to issue a particular regulation. See 5 U.S.C. § 553(b)(2) (“The notice [of proposed rulemaking] shall include ... reference to the legal authority under which the rule is proposed.... ”). But as we have repeatedly made clear, agencies have no obligation to anticipate every conceivable argument about why they might lack such statutory authority. See, e.g., Ohio v. EPA, 997 F.2d 1520, 1528-29 (D.C.Cir.1993) (finding waived argument that rule violated statute). Here, the Secretary expressly stated that he was issuing the treatment rule under his AMAA and Almond Order authority to regulate almond quality. Treatment Rule, 72 Fed.Reg. at 15,021-22 (“This rule adds outgoing quality control requirements under the administrative rules and regulations of the California almond marketing order.... The order is effective under the [AMAA].... ”). Absent a comment arguing otherwise, he had no further obligation.
Finally, we agree with the district court that the producers waived their argument that the Secretary needed to determine that the Almond Order was “the only practical means of advancing the interests of the producers.” According to the producers, they had no way to raise the Secretary’s failure to make an “only practical means” determination because such determinations “are first made by the Secretary, if at all, only in the final rule-making document.” Appellants’ Br. 64. But the Secretary never considered whether an “only practical means” determination was necessary for one simple reason: no one suggested during the rulemaking that such a determination was required. If the producers believed that an “only practical *399 means” determination was necessary because the Almond Order has lacked handler support since 1996, they had ample opportunity to alert the Secretary before he issued the treatment rule.
III.
For the reasons stated above, we affirm the district court’s grant of summary judgment for the Secretary. In doing so, we emphasize that nothing in this opinion affects the producers’ ability to raise their statutory arguments if and when the Secretary applies the rule. See Murphy Exploration & Production Co. v. U.S. Department of Interior, 270 F.3d 957, 958 (D.C.Cir.2001) (“Nothing ... prevents [plaintiff] from pursuing its claim in a second forum, i.e., apart from the original rulemaking, if such a forum is otherwise available. As we have held before, such a forum is available to a party when a rule is brought before this court for review of further agency action applying it.” (internal quotation marks omitted)).

So ordered.