WILLIAMS, Senior Circuit Judge,
concurring:
I concur in the opinion of the court. I write separately primarily to note that in the realm of judicial review of agency rules, much of the language of our opinions on “waiver” has been a good deal broader than the actual pattern of our holdings, and that that pattern itself may unfairly disadvantage parties that generally are not well represented by interest groups.
Some of our cases suggest that parties seeking review of an agency rule issued through notice-and-comment rulemaking may raise only those issues that they presented to the agency in the rulemaking. For example: “It is well established that issues not raised in comments before the agency are waived and this Court will not consider them.” Nat’l Wildlife Fed’n v. EPA, 286 F.3d 554, 562 (D.C.Cir.2002) (per curiam). But see City of Seabrook v. EPA, 659 F.2d 1349, 1360-61 (5th Cir.1981) (refusing to impose any such requirement on objections to EPA approval of a state implementation plan).[1] Indeed, the government’s brief in this case stretched the principle still further, throwing into the hopper a case involving an adjudication rather than a rulemaking, Orion Reserves Ltd. P’ship v. Salazar, 553 F.3d 697 (D.C.Cir.2009), even though parties to a litigation obviously have a far clearer burden to speak up to protect their interests than do all of the potentially mil *400 lions of persons that may be affected by a rulemaking.
These broad statements disregard one context where they are flatly wrong. As the court’s opinion notes, we have distinguished between a direct challenge to a rule on enactment and a challenge to the rule when applied. Murphy Exploration & Prod. Co. v. U.S. Dep’t of Interior, 270 F.3d 957, 958 (D.C.Cir.2001). In Murphy we stated the waiver rule in terms of “the incontrovertible proposition that one may not present an argument on appeal without having first raised it below, i.e., in the proceedings from which the litigant appeals.” Id. Thus a party that has objected in the rulemaking can raise its claim in a facial challenge in court, and a party attacking the rule in the agency’s own application proceedings can similarly extend the attack on appeal from the agency. In explaining why failure to raise a claim in the rulemaking was not a bar to an application challenge, we drew an analogy to our cases holding that a party’s missing a statutory deadline for facial review of a regulation would not bar its challenge on “review of further [agency] action applying it.” Id. (emphasis added) (citing Functional Music, Inc. v. FCC, 274 F.2d 543, 546-47 (D.C.Cir.1958)). For other cases applying the principle as to missed statutory deadlines, see Independent Community Bankers of America v. Board of Governors of the Federal Reserve System, 195 F.3d 28, 33-35 (D.C.Cir.1999) (citing cases), and NLRB Union v. Federal Labor Relations Authority, 834 F.2d 191, 195-99 (D.C.Cir.1987) (citing cases). Of course where a statute specifically precludes even an application challenge if the claim was not timely raised before the agency, we necessarily honor the statute unless the challenger poses a valid constitutional objection. See, e.g., Eagle-Picher Indus., Inc. v. EPA, 759 F.2d 905, 911, 914 (D.C.Cir.1985).[2]
Thus a party is barred from making facial claims that were not raised in the rulemaking process,[3] even ones that are ripe within the meaning of Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); but a timely objection at the application stage preserves the party’s rights. The upshot is that, with limited exceptions — for example, in cases where an agency may act without affording a pre-deprivation hearing and the affected party can and does immediately challenge the action in court, see, e.g., James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1092-95 (D.C.Cir.1996); Holiday CVS, LLC v. Holder, 839 F.Supp.2d 145 (D.D.C.2012), or in cases such as McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) — courts do not hear claims that the agency has had no opportunity to respond to or perhaps, to adapt to or adopt. This tends to economize on effort on the part of courts, agencies and to some extent even parties, including reducing the need for shuttling cases back to the agency for an explana *401 tion of its choices. See generally SEC v. Chenery Corp., 318 U.S. 80, 87-88, 63 S.Ct. 454, 87 L.Ed. 626 (1943). It further increases the potential benefits of the notice- and-eomment process itself.
Generally speaking, then, the price for a ticket to facial review is to raise objections in the rulemaking. This system probably operates quite well for large industry associations and consumer or environmental groups (and the firms and individuals thus represented). But for some the impact is more severe. Firms filling niche markets, for example, as appellants appear to be, may be ill-represented by broad industry groups and unlikely to be adequately law-yered-up at the rulemaking stage. As the Fifth Circuit observed, we presumably do not want to “require everyone who wishes to protect himself from arbitrary agency action not only to become a faithful reader of the notices of proposed rulemaking published each day in the Federal Register, but a psychic able to predict the possible changes that could be made in the proposal when the rule is finally promulgated.” City of Seabrook, 659 F.2d at 1360-61. For expressions of similar doubts from this circuit, see Gage v. United States Atomic Energy Commission, 479 F.2d 1214, 1218-19 (D.C.Cir.1973); see also 32 Charles A. Wright & Charles H. Koch, Jr., Federal Practice & Procedure § 8174 (2012 ed.) (explaining that “[mjany may be affected in various degrees by numerous rulemaking efforts” but “[cjitizens cannot participate in all the rulemakings which might affect us”).
A decision of our court has suggested a principle that would open the door to facial challenges by such mavericks. In Murphy Exploration & Production Co. v. U.S. Department of Interior, 252 F.3d 473 (D.C.Cir.2001), predecessor of the Murphy referred to earlier, we said that where a party had participated in the rulemaking, “it made sense to speak of [the party’s] failure to raise [its argument] below.” Id. at 478. But that could not rightly be said where there was no indication that the plaintiff had participated in the rulemaking in any way. Id. Thus we found no waiver.
Such a principle would provide facial review for parties who don’t bother to participate in the rulemaking — probably a group largely coincident with parties who fail to anticipate its inflicting serious costs on their interests. (Of course there would be some risk that the rule might induce strategic behavior expanding that group: non-participation in order to get facial review without disclosing one’s position to the agency. It’s not clear that such a strategy presents many advantages.) The argument for allowing facial review under these circumstances is of course at its strongest where the issue posed cannot require a remand to the agency (e.g., a claim under Chevron’s “first step”) and the hardship to the plaintiff from delay (see Abbott Labs., 387 U.S. at 148-49, 153, 87 S.Ct. 1507) is especially acute.
The first Murphy decision (cited immediately above) is, however, not binding circuit law. After the opinion was issued, the government submitted evidence that the challenger had, in fact, participated in the rulemaking proceeding, and the panel — in the Murphy decision cited earlier — vacated the relevant part of the opinion. See Murphy, 270 F.3d at 958. The panel’s reasoning, of course, remains available to future panels.
In this case, however, it seems appropriate to follow the general principle that we “take the dispute as the parties frame it.” Creighton Ltd. v. Gov’t of Qatar, 181 F.3d 118, 125 (D.C.Cir.1999). I agree with the panel that appellants in this case did not frame the dispute in any of the terms set forth above, so it would be inappropriate to *402 resolve such possible variations of the waiver doctrine in this case.

. Seabrook’s own fate has wobbled. The Fifth Circuit followed it in American Forest & Paper Ass'n v. EPA, 137 F.3d 291 (5th Cir.1998), noting that it "remains valid." But in BCCA Appeal Group v. EPA, 355 F.3d 817, 828-29 & n. 10 (5th Cir.2003), the court accepted the government’s argument that a party waived its objections to a state implementation plan by failing to comment during the administrative proceedings. The court distinguished Seabrook as involving a “purely legal" determination of whether the agency properly made the findings required by statute, whereas BCCA involved "an obligation [not] expressly imposed by the [Clean Air Act].” Id. at 829 n. 10. The court also criticized Seabrook on its merits, explaining that "in recent years the court has stepped back from Seabrook's holding on waiver, and has even applied the waiver doctrine to bar its consideration of claims that were not raised before the EPA in similar situations as the present dispute.” Id. (citing cases).
This tension between the Fifth Circuit’s cases has been noted, see, e.g., Fleming Cos. v. USDA, 322 F.Supp.2d 744, 753-54 (E.D.Tex.2004), but apparently not resolved. Some other circuits have also declined to follow Seabrook. See, e.g., Universal Health Servs., Inc. v. Thompson, 363 F.3d 1013, 1020 n. 3 (9th Cir.2004); 1000 Friends of Md. v. Browner, 265 F.3d 216, 228 n. 7 (4th Cir.2001).

. That principle is subject to an exception based on ripeness concepts. See Clean Air Implementation Project v. EPA, 150 F.3d 1200, 1204 (D.C.Cir.1998) (noting that, notwithstanding the time limit in the Clean Air Act's review provision, 42 U.S.C. § 7607(b), it is a "necessary corollary” of the ripeness doctrine that if issues that were unripe on direct challenge "later become justiciable, as a result for instance of an enforcement action, the petitioner may then raise those issues”).

. This formulation of the matter assumes, as is normally the case, that the waiver rule would not bar a facial challenge if the agency has actually addressed the issue, either sua sponte or at the behest of another party. See, e.g., Ohio v. EPA, 997 F.2d 1520, 1529 (D.C.Cir.1993).